# EXHIBIT "D"

2021 WL 3483291
Only the Westlaw citation
is currently available.
United States Court of
Appeals, Fourth Circuit.

Michael ZITO; Catherine
Zito, Plaintiffs – Appellants,
v.
NORTH CAROLINA COASTAL
RESOURCES COMMISSION,
Defendant – Appellee.
North Carolina Coastal Federation,
Amicus Supporting Appellee.

No. 20-1408
|
Argued: May 4, **2021**
|
Decided: August 9, **2021**

Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City. James C. Dever III, District Judge. (2:19-cv-00011-D)

**Attorneys and Law Firms**

ARGUED: J. David Breemer, PACIFIC LEGAL FOUNDATION, Sacramento, California, for Appellants. Ryan Y. Park, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. ON BRIEF: Glenn E. Roper, North Highlands, Colorado, Erin E. Wilcox, PACIFIC LEGAL FOUNDATION, Sacramento, California, for Appellants. Joshua H. Stein, Attorney General, Sarah G. Boyce, Deputy Solicitor General, Mary Lucasse, Special Deputy Attorney General, Marc Bernstein, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellee. Ramona H. McGee, Sierra B. Weaver, Elizabeth R. Rasheed, SOUTHERN ENVIRONMENTAL LAW CENTER, Chapel Hill, North Carolina, for Amicus North Curiae.

Before GREGORY, Chief Judge, MOTZ, and THACKER, Circuit Judges.

**Opinion**

Affirmed by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Motz and Judge Thacker joined.

GREGORY, Chief Judge:

*1 This case asks whether a Fifth Amendment takings claim against the North Carolina Coastal Resources Commission (the "Commission") is barred by State **sovereign immunity**. When the Commission denied Plaintiffs Michael and Catherine Zito (the "Zitos") permission to rebuild their vacation home due to environmental regulations, the Zitos brought suit in federal court, claiming that the State deprived them of the value of their property and committed a taking under the Fifth Amendment. The district court granted the State's motion to dismiss for lack of subject matter jurisdiction due to the State's immunity from suit in federal court. We affirm the district court's dismissal.

**I.**

In 2008, the Zitos purchased a beachfront house and lot (the "Property") in South Nags Head, North Carolina. The Property is located on one of the State's barrier islands, a system of narrow islands that run along the State's coast. Between 2008 and 2016, the Zitos used the house as a vacation home and rental property. But on October 10, 2016, the house caught fire and burned to the ground. Following the fire, the Zitos sought to rebuild the house on the same lot.

Given its location, the Zitos' Property is governed by North Carolina's Coastal Area Management Act ("CAMA"). Enacted in 1974, CAMA created the Commission to implement rules regulating land-use planning, development permits, and beach management and restoration along North Carolina's coasts. N.C. Gen. Stat. §§ 113A-103(2), -107, -110, -120, -134.11. One of CAMA's goals is "[t]o [e]nsure that the development or preservation of the ... coastal area proceeds in a manner consistent with the capability of the land and water for development, use, or preservation based on ecological considerations." *Id.* § 113A-102(b)(2).

To do so, CAMA requires coastal property development to be set back a certain distance from the vegetation line—the first line of natural vegetation which marks the boundary between the beach and more stable land. 15A N.C. Admin. Code 07H .0305(a)(5), .0306(a)(1). These set-back requirements protect property owners from coastal storms and encroaching waters while also preventing disturbance to the beaches and dunes that act as buffers for the property and environment further inland. *See id.* at .0306(a); Br. of N.C. Coastal Fed'n, as *Amicus Curiae* in Support of Appellee at 11–12. Under CAMA, buildings with less than 5,000 square feet must be set back a distance at least 60 feet or 30 times the local rate of erosion, whichever is farther. 15A N.C. Admin. Code 7H.0306(a)(5)(A). But buildings of less than 2,000 square feet built before June 1, 1979 fall under a grandfather provision, requiring the property to be set back only 60 feet from the line of vegetation. 15A N.C. Admin. Code 7H.0309(b).

Though the Zitos' Property qualifies for the grandfather provision, it fails to satisfy the 60 feet set-back limit. Based on an October 2017 survey, the Property is currently set back only 12 feet from the vegetation line. In 2018, the coastline by the Property eroded at an average rate of six feet per year. The next year, the average rate of erosion climbed to seven feet per year. According to *amicus curiae*, coastal erosion and rising sea levels could cause the Property to be underwater by 2024. Br. of N.C. Coastal Fed'n, as *Amicus Curiae* in Support of Appellee at 7.[1]

---

[1] The effects of annual erosion are offset, to some extent, by the State's beach renourishment projects. North Carolina has carried out beach renourishment projects in 2010 and 2019. The 2019 renourishment project appears to have still been in progress in June 2020, but the record does not indicate whether the 2019 project is now complete or whether it has affected the setback lines. *See* J.A. 55.

\*2 To enforce its set-back regulations, CAMA requires a permit for property development that will affect "any area of environmental concern," such as the barrier islands where the Property is located. N.C. Gen. Stat. § 113A-118(a). To acquire a minor permit—for the construction of a small residential building, such as a house [2]—individuals must apply to the local city or county; if the initial application is denied, applicants may seek administrative review or a variance from the Commission. *Id.* §§ 113A-118(b), - 120.1, -121(b), -121.1; 15A N.C. Admin. Code 07J.0201.

[2] Though the Zitos wished only to replace the house that had previously been built on the lot, the Commission's regulations consider the "[r]eplacement of structures damaged or destroyed by natural elements, fire or normal deterioration" to be "development [that] requires CAMA permits." 15A N.C. Admin. Code 7J .0210.

The Zitos applied for a permit from the Town of Nags Head. The Town's local permit officer denied the application because the Property did not meet CAMA's set-back requirements. The Zitos then filed a petition for a variance with the Commission. After considering the petition at a public hearing, the Commission issued its Final Agency Decision denying the variance on December 27, 2018. When notifying the Zitos of the denial, the Commission also informed them of their right to appeal the decision in state superior court.

The Zitos filed suit in federal court, arguing that CAMA's restrictions amounted to an unconstitutional taking. The Commission filed a motion to dismiss for lack of subject matter jurisdiction, claiming that the suit was barred by State sovereign immunity. The district court agreed with the Commission. First, it found that the Commission qualifies as an arm of the State subject to the protections of sovereign immunity. *Zito v. N.C. Coastal Res. Comm'n*, 449 F. Supp. 3d 567, 577–79 (E.D.N.C. 2020). It then relied upon this Court's decision in *Hutto*, where we held that "the Eleventh Amendment bars Fifth Amendment taking claims against States in federal court where the State's courts remain open to adjudicate such claims." *Id.* at 576 (quoting *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 552 (4th Cir. 2014)). Determining that North Carolina's Constitution permits individuals to bring takings claims in state court, the district court concluded that Plaintiffs' claims against the State were barred by sovereign immunity in federal court. *Id.* at 580–83. The Zitos appealed.

II.

A.

State sovereign immunity presents a question of law that we review de novo. *See Hutto*, 773 F.3d at 542. Because sovereign immunity is waivable, this Court treats it "akin to an affirmative defense," meaning that the defendant bears the burden of demonstrating that sovereign immunity applies. *Id.* at 543.

The Zitos do not dispute that the Commission is an arm of the State, such that sovereign immunity may apply. But they argue that the

Fifth Amendment's Takings Clause overcomes State sovereign immunity.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. While courts—including this one—frequently refer to States' immunity from suit as "Eleventh Amendment immunity," *see, e.g.,* Hutto, 773 F.3d at 542, the phrase is "something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." Alden v. Maine, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Rather, "States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today ... except as altered by the plan of the [Constitutional] Convention or certain constitutional amendments." Id.

*3 The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Zitos contend that because the Fifth Amendment's Takings Clause is self-executing—guaranteeing a remedy of just compensation—it reflects a Constitutional structure that exempts takings claims from the limitations of sovereign immunity.[3] While the Takings Clause originally applied only to the federal government, Plaintiffs argue that its incorporation to the States in the Fourteenth Amendment abrogated the sovereign immunity of States as well.

[3] Plaintiffs briefly draw a comparison to the Bankruptcy Clause, which the Supreme Court held to create a constitutional exception to sovereign immunity. *See* Cent. Va. Cmty. Coll. v. Katz, 546 U.S. 356, 373–78, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006). But the Supreme Court has since declared that this exception is "limited to the Bankruptcy Clause" due to the "singular nature" of bankruptcy jurisdiction. Allen v. Cooper, — U.S. —, 140 S. Ct. 994, 1002, 206 L.Ed.2d 291 (2020). The Supreme Court "view[s] bankruptcy as on a different plane, governed by principles all its own." Id. at 1003. Its treatment of the Bankruptcy Clause and sovereign immunity is therefore "a good-for-one-clause-only holding." Id.

However, this Court adopted a different reading of the Takings Clause and sovereign immunity in Hutto, 773 F.3d at 540. In Hutto, South Carolina public employees challenged a state law amending pension benefits and contributions for public employees who returned to work after retirement. Id. They argued that changes to the law amounted to a taking because the changes ended benefits and required the employees to make additional contributions. Addressing sovereign immunity, the plaintiffs in Hutto made the same claim the Zitos make here—that "sovereign immunity *never* bars a constitutional takings claim" due to the Takings

Clause's guarantee of just compensation." *Id.* at 551.

This Court disagreed. We observed that the Supreme Court has recognized the surrender of State sovereign immunity in six contexts:

> (1) when a State consents to suit; (2) when a case is brought by the United States or another State; (3) when Congress abrogates sovereign immunity pursuant to Section 5 of the Fourteenth Amendment or pursuant to the Bankruptcy Clause; (4) when a suit is brought against an entity that is not an arm of the State; (5) when a private party sues a state official in his official capacity to prevent an ongoing violation of federal law; and (6) when an individual sues a state official in his individual capacity for ultra vires conduct.

*Id.* (citing *S.C. State Ports Auth. v. Fed. Mar. Comm'n*, 243 F.3d 165, 176–77 (4th Cir. 2001)). We declined to create an additional, blanket exception for the Takings Clause. Although "there is arguably some tension" between the Fifth Amendment guarantee of just compensation and the bar of **sovereign immunity**, "that tension is not irreconcilable." *Id.*

To resolve that tension, this Court compared the Takings Clause to the Due Process Clause's right to a remedy for taxes collected in violation of federal law. *Id.* at 551–52. "In a long line of cases," the Supreme Court "has established that due process requires a 'clear and certain' remedy for taxes collected in violation of federal law." *Reich v. Collins*, 513 U.S. 106, 108–09, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994) (citing *McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco, Fla. Dep't of Bus. Regulation*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) and "the long line of cases upon which *McKesson* depends"). "[D]espite the constitutional requirement that there be a remedy, the Supreme Court expressly noted in *Reich* ... that the **sovereign immunity** that States enjoy in federal court, under the Eleventh Amendment, does generally bar tax refund claims from being brought in that forum." *Hutto*, 773 F.3d at 552 (cleaned up). Nevertheless, *Reich* held that *state courts* must allow suits to recover taxes unlawfully collected, the "**sovereign immunity** [that] States traditionally enjoy in their own courts notwithstanding." *Reich*, 513 U.S. at 110, 115 S.Ct. 547. "Reasoning analogously," this Court concluded that "the Eleventh Amendment bars Fifth Amendment taking claims against States in federal court when the State's courts remain open to adjudicate such claims." *Hutto*, 773 F.3d at 551.[4]

---

[4] This Court "[did] not decide the question whether a State can close its doors to a takings claim or the question

whether the Eleventh Amendment would ban a takings claim in federal court if the State courts were to refuse to hear such a claim." *Hutto*, 773 F.3d at 551.

### B.

**\*4** The Zitos argue that the Supreme Court's ruling in *Knick v. Township of Scott*, ––– U.S. ––––, 139 S. Ct. 2162, 204 L.Ed.2d 558 (2019) undermined *Hutto*'s reasoning. Because *Knick* held that plaintiffs can bring a takings claim in federal court, regardless of state remedies available, the Zitos believe *Knick* abrogated *Hutto*'s rule applying **sovereign immunity** in federal court if state courts are open to such claims.

*Knick* addressed the substantive requirements of a takings claim: It decided when the plaintiff has "suffered a violation of his Fifth Amendment rights" and is "able to bring a 'ripe' federal takings claim in federal court." *Knick*, 139 S. Ct. at 2168. Before *Knick*, the Supreme Court held in *Williamson County* that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In other words, the *Williamson County* Court believed a person to be denied just compensation at the moment a person's claim for compensation was denied in state court. But *Williamson County* inadvertently laid a "trap" for potential litigants. Because the full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to give preclusive effect to a state court decision, *Williamson County*'s substantive definition of a takings claim effectively prevented federal courts from reviewing federal takings claims. *Knick*, 139 S. Ct. at 2169. Reversing *Williamson County*, the Supreme Court held in *Knick* that a property owner is denied just compensation and has an actionable claim in federal court "as soon as a government takes his property for public use without paying for it." *Id.* at 2170.

*Knick* did not address **sovereign immunity**, as it involved a suit against a town. *See Jinks v. Richland Cnty.*, 538 U.S. 456, 466, 123 S.Ct. 1667, 155 L.Ed.2d 631 (2003) ("[M]unicipalities, unlike States, do not enjoy a constitutionally protected immunity from suit."). Thus, every circuit to address *Knick*'s effect on **sovereign immunity** has concluded that *Knick* did not abrogate State **sovereign immunity** in federal court. *See Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019) ("But *Knick* did not involve Eleventh Amendment immunity, which is the basis of our holding in this case."); *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456–57 (5th Cir. 2019) ("Nor does anything in *Knick* even suggest, let alone require, reconsideration of longstanding **sovereign immunity** principles protecting states from suit in federal court."), *cert. denied*, ––– U.S. ––––,

140 S. Ct. 2566, 206 L.Ed.2d 497 (2020); Ladd v. Marchbanks, 971 F.3d 574, 579 (6th Cir. 2020) ("[T]he Court's opinion in Knick says nothing about **sovereign immunity**."), cert. denied, ––– U.S. ––––, 141 S. Ct. 1390, 209 L.Ed.2d 129 (**2021**).

To sidestep this fact, the Zitos suggest that Knick indirectly altered the **sovereign immunity** framework by recognizing the self-executing nature of the Takings Clause in federal court. But the Supreme Court recognized the self-executing nature of the Takings Clause in federal court well before Knick. See Jacobs v. United States, 290 U.S. 13, 16, 54 S.Ct. 26, 78 L.Ed. 142 (1933) ("[S]uits [ ] based on the right to recover just compensation for property taken by the United States .... rested upon the Fifth Amendment. Statutory recognition was not necessary."). Knick itself makes this point when quoting Jacobs to explain that the form of a state remedy does not qualify the substantive takings claim because the claim "rest[s] upon the Fifth Amendment." Knick, 139 S. Ct. at 2170 (quoting Jacobs, 290 U.S. at 16, 54 S.Ct. 26). So Knick did nothing new with respect to the self-executing nature of the Takings Clause in federal court.[5]

---

[5] This Court likewise recognized the self-executing nature of the Takings Clause in Hutto. See 773 F.3d at 551–52 ("Just as the Constitution guarantees the payment of just compensation for a taking, so too does the Due Process Clause provide the right to a remedy for taxes collected in violation of federal law."); id. at 553 (quoting other circuits stating that the "self-executing" nature of a takings claim does not override **sovereign immunity** in federal court).

**\*5** Additionally, Knick's discussion of the Takings Clause does not imply any link between the self-execution of the Takings Clause and the elimination of **sovereign immunity**. To the contrary, the Supreme Court's analysis compares the Takings Clause to other constitutional rights that may be subject to **sovereign immunity**. The Court wrote,

> Although Jacobs concerned a taking by the Federal Government, the same reasoning applies to takings by the States. The availability of any particular compensation remedy, such as an inverse condemnation claim under state law, cannot infringe or restrict the property owner's federal constitutional claim—just as the existence of a state action for battery does not bar a Fourth Amendment claim of excessive force.

Knick, 139 S. Ct. at 2171. By drawing a comparison to Fourth Amendment claims of excessive force, the Supreme Court indicated that its analysis did not deal with **sovereign**

**immunity**, which otherwise limits Fourth Amendment suits seeking damages against States. Ultimately, the *Knick* Court expressed its belief that *Williamson County* made the Takings Clause an inferior right "among the provisions of the Bill of Rights"; by reversing *Williamson County*, the Court meant to "restor[e] takings claims" to equal and "full-fledged status ... among the other protections in the Bill of Rights." *Id.* at 2169–70; *see also id.* at 2177 ("Takings claims against local governments should be handled the same as other claims under the Bill of Rights."). By treating the Takings Clause the same as other constitutional rights, the Supreme Court suggests that it remains subject to the same limitations on those other rights—including **sovereign immunity**. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

Accordingly, *Knick* did not undermine *Hutto*, where this Court held **sovereign immunity** to bar a takings claim against a State in federal court if state courts remain open to adjudicating the claim.

### III.

We next consider whether North Carolina courts remain open to adjudicating the Zitos' takings claim. The parties agree that state courts satisfy this requirement if they provide a "reasonable, certain, and adequate" means for challenging an action as a taking and obtaining compensation if the challenge is successful. *See* Oral Argument at 29:03–29:19; *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 213 (4th Cir. 2019) (quoting *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659, 10 S.Ct. 965, 34 L.Ed. 295 (1890)).

Though North Carolina's Constitution generally provides a cause of action for plaintiffs to bring takings claims, *see Corum v. Univ. of N.C.*, 330 N.C. 761, 413 S.E.2d 276, 289 (1992), the Zitos contend that takings claims against the Commission are governed by North Carolina General Statutes § 113A-123(b)–(c), which provides an "exclusive" procedure where invalidation of the state action is the sole remedy. Because invalidation does not compensate the plaintiff for any temporary taking, the Zitos insist that North Carolina courts do not provide an adequate avenue for just compensation.

Section 113A-123(b) states that any person with a recorded interest in land affected by a final order of the Commission may "petition the superior court to determine whether the petitioner is the owner of the land in question" and "determine whether ... the order constitutes the equivalent of taking without compensation." N.C. Gen. Stat. § 113A-123(b). "Either party shall be entitled to a jury trial on all issues of fact, and the court shall enter a judgment ... as to whether the Commission order shall apply to the land of the petitioner." *Id.* "The method provided in this subsection for the determination of the issue of whether such order constitutes a taking without compensation shall be exclusive and such issue shall not be determined in any other proceeding." *Id.* If the court has determined the action to be a taking, and the State still intends to regulate the property, then the State must

initiate eminent-domain proceedings "under the provisions of Chapter 146 of the General Statutes," *id.* § 113A-123(c), which would result in compensation. *See* N.C. Gen. Stat. §§ 136-103, -104, -109, -112.

*6 The Zitos, however, emphasize the outcome if the state court rules the Commission's action to be a taking and the State does not pursue eminent-domain proceedings (i.e., if the State agrees to cease the regulatory restriction). To the Zitos, § 113A-123(b) would invalidate the restriction but offer no compensation for the temporary taking. In this situation, the Commission asserts that the plaintiff may bring a subsequent suit under the North Carolina Constitution to obtain compensation for the temporary taking.[6]

[6] At oral argument, the State represented that a plaintiff could file a claim for compensation for the temporary taking the same day that the state court found the Commission's action to be a taking. *See* Oral Argument at 39:12–40:08.

We agree with the Commission. Section 113A-123(b) states that its procedure "shall be exclusive" only "for the determination of *the issue* of whether such order constitutes a taking without compensation." N.C. Gen. Stat. § 113A-123(b) (emphasis added). It does not state that this shall be the exclusive procedure for determining all available remedies. Because the North Carolina Constitution provides an independent cause of action for plaintiffs to seek damages for a takings claim, *Corum*, 413 S.E.2d at 289, 330 N.C. 761, it permits the Zitos to pursue damages after establishing through § 113A-123(b) that the regulation amounted to a taking.

Even if we assume that N.C. Gen. Stat. § 113A-123(b) provides the exclusive remedy for a takings claim brought against the Commission, North Carolina's constitutional guarantees would override that limitation to the extent it prevented the redress for a temporary taking. *See Carolina Beach Fishing Pier, Inc. v. Town of Carolina Beach*, 274 N.C. 362, 163 S.E.2d 363, 371 (1968) ("It is familiar learning that a citizen may sue the State ... for taking his private property for a public purpose under the Constitution where no statute affords an adequate remedy."); *Corum*, 413 S.E.2d at 289, 330 N.C. 761 ("[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution."); *Taylor v. Wake Cnty.*, 258 N.C.App. 178, 811 S.E.2d 648, 652 (2018) ("A *Corum* claim allows a plaintiff to recover compensation for a violation of a state constitutional right for which there is either no common law or statutory remedy, or when the common law or statutory remedy that would be available is inaccessible to the plaintiff.").[7]

[7] Though this right of action arises from a state constitutional right, North Carolina uses the same standard for determining whether a taking has occurred under both the U.S. and North Carolina Constitutions. *See Finch v. City of Durham*, 325 N.C. 352, 384 S.E.2d 8, 19 (1989) (holding that a rezoning did not constitute a taking under the North Carolina

Constitution and that the rezoning therefore did not constitute a taking under the U.S. Constitution "for the same reasons"); *Guilford Cnty. Dep't of Emergency Servs. v. Seaboard Chem. Corp.*, 114 N.C.App. 1, 441 S.E.2d 177, 183 (1994) ("We find that these tests are consistent and therefore analyze Seaboard's state and federal constitutional [takings] claims together.").

For instance, in *Midgett*, a landowner sued the State Highway Commission for a taking because its construction of a nearby highway caused his property to become flooded. *Midgett v. N.C. State Highway Comm'n*, 260 N.C. 241, 132 S.E.2d 599, 602 (1963), *rev'd on other grounds by Lea Co. v. N.C. Bd. of Transp.*, 308 N.C. 603, 304 S.E.2d 164 (N.C. 1983). Though North Carolina provided an "ordinarily exclusive" statutory remedy for the taking, the applicable condemnation statute contained a statute of limitations that "would make a recovery by the plaintiff in the instant case impossible." *Id.* at 608. Nevertheless, the North Carolina Supreme Court held that the plaintiff's taking claim could be maintained under the State Constitution. *Id.* The Court explained that the State Constitution's promise of just compensation for a taking is not "susceptible of impairment by legislation," and where "no statute affords an adequate remedy under a particular fact situation, the common law will furnish the appropriate action for adequate redress of such grievance." *Id.*; *see also Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 678 S.E.2d 351, 356–57 (2009) (reaffirming *Midgett*

and North Carolina's "long-standing emphasis on ensuring redress for every constitutional injury").

*7 In reply, the Zitos contend that even if they can bring a takings claim for damages after § 113A-123(b) proceedings, the statutory proceedings effectively create an exhaustion requirement forbidden by the Supreme Court in *Knick*. But again, the Zitos misstate the holding of *Knick*. *Knick* prohibited the use of *state* procedures as an exhaustion requirement for a takings claim in *federal* court. *See Knick*, 139 S. Ct. at 2167. But *Knick* did not prohibit States from establishing procedural requirements in their own courts. Indeed, *Knick* reaffirmed *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018 n.21, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), where the Supreme Court upheld a federal statute that "required the plaintiff to attempt to vindicate its [takings] claim [ ] through arbitration before proceeding [with their takings claim] under the Tucker Act." *Knick*, 139 S. Ct. at 2173. This requirement was permissible because Congress "is free to require plaintiffs to exhaust administrative remedies before bringing constitutional claims" in federal court. *Id.*; *see also Ladd*, 971 F.3d at 579 ("In reaffirming [*Ruckelshaus*], the Court notes that Congress can, as a condition of its waiver of **sovereign immunity** in the Tucker Act, require takings plaintiffs to exhaust administrative remedies before proceeding to federal court."). If Congress can condition its waiver of federal **sovereign immunity** in federal court by requiring plaintiffs to satisfy certain exhaustion requirements, it follows that States may condition their waiver of State

**sovereign immunity** the same way in their courts as well. *See Felder v. Casey*, 487 U.S. 131, 138, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) ("No one disputes the general and unassailable proposition ... that States may establish the rules of procedure governing litigation in their own courts.").

Of course, there are limits on the procedural constraints that the States may impose. The Supreme Court has warned that state procedures violate the Supremacy Clause if the procedures effectively deprive plaintiffs of their federal rights. *See id.* ("[W]here state courts entertain a federally created cause of action, the 'federal right cannot be defeated by the forms of local practice.'"). For example, a State may not adopt procedures that discriminate between state and federal claims. *See Haywood v. Drown*, 556 U.S. 729, 738, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009); *Felder*, 487 U.S. at 141, 108 S.Ct. 2302. But the Zitos' arguments revolve around *Knick*, and they otherwise offer no argument for why North Carolina's procedures might impede their federal rights in violation of the Supremacy Clause. As explained above, North Carolina's procedures are consistent with *Knick*; North Carolina's procedures guarantee the ability to challenge the Commission's action as a taking in state court; and if North Carolina's statutes do not provide an adequate constitutional remedy, the North Carolina Constitution guarantees the Zitos the ability to seek that remedy in state court.

Thus, North Carolina's courts remain open for takings claims. Under *Hutto*, this means that **sovereign immunity** bars the Zitos' claims against the State in federal court. 773 F.3d at 552.

IV.

We recognize there must be sorrow in the Zitos' loss of their home, and even more so in light of the steadily rising swells of our oceans' waters. But State **sovereign immunity** bars their takings claims against the Commission in federal court when North Carolina's courts remain open to adjudicating those claims. For the foregoing reasons, we affirm the district court's judgment.

*AFFIRMED*

**All Citations**

--- F.4th ----, 2021 WL 3483291

---