IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GARY VICTOR DUBIN, et al., | CIVIL NO. 21-00175 JAO-KJM |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH |
| vs. | PREJUDICE VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND |
| THE SUPREME COURT OF THE STATE OF HAWAII, et al., | FOR ACTUAL AND PUNITIVE CIVIL RIGHTS DAMAGES |
| Defendants. | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND FOR ACTUAL AND PUNITIVE CIVIL RIGHTS DAMAGES**

In this putative class action, Plaintiffs Gary Dubin ("Dubin"), an attorney, and nearly 200 of his former clients ("Client Plaintiffs") (collectively, "Plaintiffs"), challenge the constitutionality of Hawaii's attorney disciplinary process, and as related to the disciplinary proceedings against Dubin. Defendants the Hawaiʻi Supreme Court ("HSC"), Chief Justice Mark E. Recktenwald, Associate Justices Paula A. Nakayama, Sabrina S. McKenna, Michael D. Wilson (collectively, the

"Justices"), and Associate Judge Katherine S. Leonard ("Judge Leonard");[1] and the Office of Disciplinary Counsel of the HSC ("ODC"), the Disciplinary Board of the HSC ("Disciplinary Board") (collectively, the "Disciplinary Entities"), Bradley R. Tamm ("Tamm"), Clifford Nakea ("Nakea"), Roy F. Hughes ("Hughes"), Charlene M. Norris ("Norris"), and Andrea R. Sink ("Sink") (collectively, the "Disciplinary Individuals") seek dismissal of the Complaint on jurisdictional and immunity grounds.  ECF No. 10.  Defendant the Lawyers' Fund for Client Protection of the HSC ("Lawyers' Fund")[2] substantively joins in the request for dismissal and alternatively asks the Court to abstain.  ECF No. 11.

For the following reasons, the Court GRANTS the Motion to Dismiss with Prejudice Verified Complaint for Declaratory Relief and for Actual and Punitive Civil Rights Damages ("Motion" or "Motion to Dismiss") and the Substantive Joinder in Defendants' Motion ("Joinder").

---

[1]  Judge Leonard is on the Hawai'i Intermediate Court of Appeals.  Judge Leonard, the Justices, and HSC are collectively referred to as the "State Defendants."  The Justices and Judge Leonard are sued in their official capacities.

[2]  The Disciplinary Entities, the Disciplinary Individuals, and the Lawyers' Fund are collectively referred to as the "Disciplinary Defendants."  The Disciplinary Individuals are sued in their individual capacities.

## BACKGROUND

I.     **Factual History**

A.     **The Parties**

1.     **Dubin and the Client Plaintiffs**

Dubin was admitted to the Hawaiʻi Bar in 1982, and disbarred by HSC on September 9, 2020, with an effective date of October 9, 2020, later extended to November 9, 2020.[3]  Compl. ¶ 6; ECF Nos. 10-5, 10-7.  The Client Plaintiffs claim to have been harmed by the loss of Dubin's legal representation and services in state court.  Compl. ¶ 10.  They comprise approximately half of Dubin's clients who were affected by his disbarment.  *Id.* ¶ 11.  Dubin expects additional clients to seek to join the lawsuit on his and their behalf "once the harmful acts and conduct challenged below become also known to and experienced by them."  *Id.*

2.     **HSC**

The Hawaiʻi Constitution established the State judiciary, including HSC. Section 1 of Article VI provides:  "The judicial power of the State shall be vested in one supreme court, one intermediate appellate court, circuit courts, district courts and in such other courts as the legislature may from time to time establish."

---

[3]  Dubin subsequently filed two motions for reconsideration, both of which HSC denied.  ECF Nos. 10-5, 10-6.  He also filed an application for an emergency stay and a Petition for Writ of Certiorari with the United States Supreme Court.  They, too, were denied.  ECF Nos. 10-3, 10-4; *In re Gary Victor Dubin*, Civil No. 20-00419 JAO-KJM, ECF Nos. 11-1, 13.

Haw. Const. Art. VI, § 1.  HSC is authorized "to promulgate rules and regulations in all civil and criminal cases for all courts relating to process, practice, procedure and appeals, which shall have the force and effect of law," and "consist[s] of a chief justice and four associate justices."  *Id.* §§ 2, 7; *see also* Hawai'i Revised Statutes ("HRS") § 602-11 ("The supreme court shall have power to promulgate rules in all civil and criminal cases for all courts relating to process, practices, procedure and appeals, which shall have the force and effect of law.").  HSC also has "the sole power to revoke or suspend the license of any" practitioner it examines, admits, or reinstates.  HRS § 605-1(a); *see also* Rules of the Supreme Court of Hawai'i ("RSCH") Rule 2.1 ("Any attorney admitted to practice law in this state . . . is subject to the exclusive disciplinary jurisdiction of the supreme court and the Board hereinafter established.").

### 3.    ODC and Disciplinary Board

ODC and the Disciplinary Board "are creatures of [HSC], created pursuant to [HSC's] inherent and constitutional authority to regulate the practice of law."  *In re Disciplinary Bd. of the Haw. Sup. Ct.*, 91 Hawai'i 363, 368, 984 P.2d 688, 693 (1999) (citations omitted).  RSCH Rule 2.4(a) governs HSC's appointment of the Disciplinary Board, consisting of 18 members, at least one-third of whom shall not be attorneys.  The Disciplinary Board in turn has the authority (1) "[t]o employ, supervise, and terminate a Chief Disciplinary Counsel, hereinafter Chief Counsel, a

Deputy Chief Disciplinary Counsel, Assistant Disciplinary Counsel, and staff employees, and to appoint volunteers to assist the Board in the exercise of its duties" and "delegate to Chief Counsel the authority to employ and supervise the Deputy Chief Counsel and Assistant Counsel, to employ, supervise and terminate staff, and to appoint volunteers"; (2) "[t]o appoint Special Assistant Disciplinary Counsel when Chief Disciplinary Counsel and all full time Assistant Disciplinary Counsel are disqualified"; and (3) to appoint "and establish the terms of office of, an appropriate number of persons to serve as hearing committee members and officers."  RSCH Rule 2.4(e)(2)–(4).  Pertinent here, the Disciplinary Board is tasked with investigating attorney disciplinary or incapacitation matters, adopting procedural rules governing the Disciplinary Board and hearing committees and officers, and adopting and publishing advisory opinions interpreting the Hawaiʻi Rules of Professional Conduct.  *See* RSCH Rule 2.4(e)(1), (6)–(7).  RSCH Rule 2.5 addresses hearings conducted by the hearing committee in disciplinary proceedings and petitions for reinstatement of suspended or disbarred attorneys.

The Disciplinary Individuals are associated with the Disciplinary Board or ODC.  Nakea is the Chair of, and Hughes is a hearing officer for, the Disciplinary Board.  ECF No. 10-1 at 11 n.5.  Tamm is ODC's Chief Disciplinary Counsel, Norris is Senior Disciplinary Counsel, and Sink is a former investigator.  *Id.*

5

### 4.    Lawyers' Fund

"The purpose of the Lawyers' Fund . . . is the reimbursement, to the extent and in the manner provided by these rules, of losses caused by the dishonest conduct of members of the bar of this State and any attorney specially admitted by any court of this State."  RSCH Rule 10.1(a).  The Lawyers' Fund is comprised of five trustees — three lawyers and two nonlawyers — appointed by HSC.  RSCH Rule 10.1(b).  The trustees adopt rules, subject to the Hawaiʻi State Bar's review and HSC's approval, "governing the administration of the Fund, the procedures for the presentation, consideration and payment of claims, and the exercise of their investment powers."  RSCH Rule 10.1(d).  Plaintiffs allege that Tamm was also heading the Lawyers' Fund during Dubin's disciplinary proceedings.  Compl. ¶ 19.

### 5.    Factual Allegations

Plaintiffs claim that ODC targeted the Hawaiʻi foreclosure defense bar — and eventually Dubin — leading to suspensions and disbarments.  Compl. ¶ 67. According to Plaintiffs:

> Dubin became raw meat for the ODC, who subjected him to procedures that likely would have even made the Judges of the English Star Chamber blush, affording him through the entire process of his disbarment procedures none of the thirteen DCCA protections given members of other professionals [sic] . . . a virtual orgy of deprivations, also in violation of written yet unenforced Hawaii Supreme Court and Board Rules[.]

*Id.* ¶ 70.  Plaintiffs identify a host of perceived deficiencies with the disciplinary process, including conflicts of interest; fishing expeditions in search of ethical violations; consolidation of unrelated complaints; untimely disclosure of the nature of discipline sought; ODC staff's lack of training and frequent turnover; ex parte communications with members of HSC regarding additional complaints about Dubin, which purportedly prejudiced his disciplinary proceedings; denial of the opportunity to cross-examine a complainant; adoption of ODC's recommendation without any changes; issuance of new findings by HSC; ODC's lack of knowledge about foreclosure defense; and animosity toward Dubin.  *Id.* at 75–82.  Plaintiffs allege that despite ODC's efforts to create a false record of misconduct by committing due process violations, its petition for discipline was not supported by a preponderance of the evidence, much less clear and convincing evidence.  *Id.* ¶ 72.  In the end, the Disciplinary Board recommended, and HSC ordered, Dubin's disbarment.  *Id.* ¶ 73.

Plaintiffs refute each finding issued by HSC with extensive facts and arguments, concluding that they have "proven" the falsity of the findings.  *Id.* at 82–137.  Plaintiffs represent that Dubin's disbarment caused him to lose his remaining associates and nearly all of his remaining staff, and harmed his clients who were left without legal counsel in the midst of litigation at various stages of the proceedings.  *Id.* ¶ 267.

## II.   **Procedural History**

Plaintiffs commenced this action on April 9, 2021, asserting nine causes of

action:

- **Counts One (Dubin) and Two (Client Plaintiffs) against the State Defendants for declaratory relief — unconstitutional exercise of legislative authority**:  HSC and the disciplinary system are without jurisdiction to regulate attorneys for conduct outside the courtroom because the authority rests with the legislature, which has never delegated it to HSC. *Id.* ¶¶ 277–78, 283, 292–93, 298.

- **Counts Three (Dubin) and Four (Client Plaintiffs) against the State Defendants for declaratory relief — unconstitutional violation of equal protection**:  Without the authority to do so, HSC regulates the legal profession differently in disciplinary proceedings from how the legislature regulates other professions and occupations within the state, in violation of the Equal Protection Clause of the Fourteenth Amendment.  *Id.* ¶¶ 307–08, 313, 322–23, 328.

- **Counts Five (Dubin) and Six (Client Plaintiffs) against the State Defendants for declaratory relief — unconstitutional violation of due process**:  HSC and its attorney discipline  procedures as promulgated and/or as applied deny targeted attorneys evidentiary and appellate rights in violation of the Due Process Clause of the Fourteenth Amendment.  *Id.* ¶¶ 337–38, 343, 352–53, 358.

- **Counts Seven (Dubin) and Eight (Client Plaintiffs) against the Disciplinary Defendants for actual and punitive damages — unconstitutional violation of due process**:  The Disciplinary Defendants individually or together conspired to target Dubin, hiding disqualifying conflicts of interest and exculpating evidence, and providing false information to HSC through hidden false ex parte communications, designed to disbar Dubin, in violation of his Fourteenth Amendment due process rights.  *Id.* ¶¶ 367–70, 376–79.

- **Count Nine (Dubin) against the Disciplinary Defendants for actual and punitive damages — unconstitutional violation of free speech**:  The Disciplinary Defendants engaged in the due process violations outlined in

8

Counts Seven and Eight in order to cancel his radio show, in violation of the First Amendment. *Id.* ¶¶ 385–89.

Plaintiffs request:  (1) a declaration that HSC's attorney disciplinary structure violates the U.S. Constitution as promulgated and/or applied and is unconstitutional pursuant to the Hawai'i Constitution, *id.* ¶ 394; (2) actual and punitive damages, *id.* ¶¶ 395–96; and (3) attorneys' fees and costs.  *Id.* ¶ 397.

The State Defendants, the Disciplinary Entities, and the Disciplinary Individuals filed the present Motion on June 17, 2021.  ECF No. 10.  The Lawyers' Fund substantively joined in the Motion.  ECF No. 11.  Plaintiffs filed an Opposition on July 26, 2021.[4]  ECF No. 19.  Defendants filed their Reply on August 2, 2021.  ECF No. 24.  On the eve of the hearing, Plaintiffs filed joint submissions of supplemental authority signed exclusively by Dubin.  ECF Nos. 27–29.  These submissions[5] violate the Court's July 30, 2021 Entering Order, which stated:  "Plaintiffs may file joinders to the extent they are permitted by the Local Rules, *but the Court will not accept a single filing as a consolidated filing on*

---

[4]  Plaintiffs improperly filed a single opposition, signed exclusively by Dubin, in violation of Local Rule 83.5(a):  "When a party is represented by an attorney, the party may not act on his or her own behalf in the action[.]"  As such, Keith Kiuchi was required to file documents on Dubin's behalf, as Dubin's counsel.

[5]  It is unclear why Plaintiffs filed these in any event.  None of the cases have precedential value and one is a California *state court* order, upon which Plaintiffs oddly rely for its interpretation of *federal* law.

*behalf of all Plaintiffs* given that the plaintiff groups have different counsel."  ECF

No. 23 (emphasis added); *see also* ECF No. 22 ("[I]f Mr. Kiuchi is representing

Mr. Dubin, Mr. Dubin *may not* act on his own behalf." (citing Local Rule

83.5(a))).

The Court held a hearing on August 18, 2021.  ECF No. 30.

## LEGAL STANDARDS

### I.     Rule 12(b)(1)

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(1), a district court

must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims

alleged in the complaint.[6]  *See* Fed. R. Civ. P. 12(b)(1).  A jurisdictional attack

pursuant to FRCP 12(b)(1) may be facial or factual.  *See Safe Air for Everyone v.*

*Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).  A facial attack

challenges the sufficiency of the allegations contained in a complaint to invoke

federal jurisdiction, while a factual attack "disputes the truth of the allegations that,

by themselves, would otherwise invoke federal jurisdiction."  *Id.*

---

[6]  *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017) ("A
sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in
either a Rule 12(b)(1) or 12(b)(6) motion." (citations omitted)); *see White v. Lee*,
227 F.3d 1214, 1242 (9th Cir. 2000) (holding that mootness is properly raised in a
motion to dismiss pursuant to FRCP 12(b)(1) because it pertains to a court's
subject matter jurisdiction (citations omitted)).

## II.     Rule 12(b)(6)

FRCP 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions.  *See id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).  If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

## DISCUSSION

Defendants seek dismissal on the following grounds:  (1) lack of jurisdiction over disciplinary proceedings; (2) *Rooker-Feldman* doctrine; (3) Eleventh Amendment immunity; (4) the Client Plaintiffs' lack of standing; and (5) judicial/quasi-judicial immunity.  ECF No. 10-1.[7]  The Lawyers' Fund alternatively moves for abstention.  ECF No. 11.

---

[7]  The Court takes judicial notice of the documents attached to Defendants' filings. Under Federal Rule of Evidence 201, a court may take judicial notice of facts "not subject to reasonable dispute" that either "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from

(continued . . .)

As a preliminary matter, Plaintiffs' Complaint violates FRCP 8(a)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief."[8]  Fed. R. Civ. P. 8(a)(2).  Nevertheless, the Court has waded through it and addresses Defendants' grounds for dismissal.  For the reasons detailed below, *Rooker-Feldman* bars Plaintiffs' claims.  Dismissal is further warranted because:  (1) the Eleventh Amendment bars (a) Counts One through Six and (b) Seven through Nine as to the Disciplinary Entities; (2) the Client Plaintiffs lack third party standing to assert their claims (Counts Two, Four, Six, and Eight); (3) judicial or legislative immunity bars the claims against the Justices and Judge Leonard; and (4) quasi-judicial and/or prosecutorial immunity bars the claims against the Disciplinary Individuals.

---

(. . . continued)

sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)–(c)(1).  A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citations omitted); *see Bykov v. Rosen*, 703 F. App'x 484, 487 (9th Cir. 2017) (holding that the district court did not abuse its discretion by taking judicial notice of state court proceedings).  Courts may "consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).

[8]  The Complaint consists of ***181 pages*** and ***397 paragraphs***, and a significant portion is devoted to self-promotion.  Twenty-eight pages contain cherry-picked testimonials from clients.  Compl. at 44–71.

## I.      *Rooker-Feldman* Doctrine

Defendants argue that the Court lacks jurisdiction over Plaintiffs'

claims under the *Rooker-Feldman* doctrine.  Plaintiffs counter that *Rooker-*

*Feldman* is inapplicable because they do not seek reversal of the HSC's factual

findings, nor are their claims inextricably intertwined with disciplinary

proceedings.  ECF No. 19 at 32.  They also contend that the Client Plaintiffs are

not subject to *Rooker-Feldman*, as they were not parties to the disciplinary

proceedings.  *Id.*

"Under *Rooker–Feldman*, lower federal courts are without subject matter

jurisdiction to review state court decisions, and state court litigants may therefore

only obtain federal review by filing a petition for a writ of certiorari in the

Supreme Court of the United States."  *Mothershed v. Justs. of the Sup. Ct.*, 410

F.3d 602, 606 (9th Cir. 2005) (citations omitted).  District courts are barred from

not only direct appeals of state court decisions, "but also over the 'de facto

equivalent' of such an appeal." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir.

2012) (citation omitted).  Courts "pay close attention to the *relief* sought by the

federal-court plaintiff" in determining whether an action is a de facto appeal.  *Id.* at

777–78 (internal quotation marks and citation omitted).  A de facto appeal is found

"when the plaintiff in federal district court complains of a legal wrong allegedly

committed by the state court, and seeks relief from the judgment of that court." *Id.*

14

at 778 (internal quotation marks and citations omitted); *see also Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) (explaining that a plaintiff's claims must arise from the state court judgment, not merely "when a party fails to obtain relief in state court" (citation omitted)); *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (explaining that *Rooker-Feldman* precludes adjudication of claims when the redress sought by the plaintiff is an "undoing" of the prior state court judgment).

*Rooker-Feldman* does not "prohibit a plaintiff from presenting a generally applicable legal challenge to a state statute in federal court, even if that statute has previously been applied against him in state court litigation." *Mothershed*, 410 F.3d at 606. However, district courts lack jurisdiction "'over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional,'" which may only be reviewed by the Supreme Court. *Id.* at 607 (citations omitted). As-applied constitutional claims are barred because they are de facto appeals of state court decisions. *See Scheer v. Kelly*, 817 F.3d 1183, 1186 (9th Cir. 2016).

When a case "is, in part, a forbidden de facto appeal from a judicial decision of a state court," a federal court "must refuse to hear the forbidden appeal." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). "As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with

an issue resolved by the state court in its judicial decision." *Id.* Claims are

"inextricably intertwined" "where 'the relief requested in the federal action would

effectively reverse the state court decision or void its ruling.'" *Cooper*, 704 F.3d at

779 (some internal quotation marks and citation omitted).

Applying this framework, the Court finds that this action is barred by

*Rooker-Feldman*. Plaintiffs attempt to characterize this lawsuit as a contesting

HSC's jurisdiction, not an effort to reverse HSC's factual findings. ECF No. 19 at

32. At the hearing, Dubin promoted the lawsuit as an endeavor to overhaul the

entire attorney discipline system. When confronted with the explicit challenges to

his personal disciplinary proceedings, which comprises a significant portion of the

Complaint, Dubin dismissed the allegations as mere examples of the system's

existing flaws. The Complaint contains ***56 pages*** of arguments to "prove" that

HSC's factual findings were false and ***eight pages*** of the purported improprieties

that occurred during ODC's investigation against Dubin. Compl. at 75–137. In

their Opposition, Plaintiffs state:

> Pages 82 through 130 contain a complete, detailed factual
> identification of the numerous grave due process abuses Plaintiff
> Dubin experienced *in his disbarment proceedings* incorporated
> herein by this reference, from the faulty drafting of the
> Petition for Discipline omitting many of the allegations which he
> was later found without prior notice to be supposedly guilty of,
> while hiding the seriousness of the sanctions being sought until
> the hearing, to the concealment of exculpatory evidence by the
> ODC prosecutor, to the outright falsification of alleged
> disbarment evidence, together with disqualifying conflicts of

16

interest among the investigator, the Hearing Officer, and the Disciplinary Board (in that instance admitted under oath on the record by the Board Chairperson no less as intentionally concealed from Plaintiff Dubin), and the concealed receipt of prejudicially false evidence by the Court before his disbarment was even ordered.

None of that detailed list of Kangaroo Court mischief is even once disputed by the Defendants within their thirty-page moving memorandum, who instead would have this Court believe nonetheless despite such admissions that it is powerless to protect federal civil liberties, in this instance the right to a fair trial/hearing.

And for purposes only of this proceeding those uncontested facts are presumed admitted and to be true.

ECF No. 19 at 17–18 (emphasis added). This demonstrates that despite the manner in which they attempt to cast their claims, Plaintiffs are, at bottom, contesting Dubin's disciplinary proceedings.[9] So even though they assert some claims

---

[9] Plaintiffs lay bare their true intentions in their Joint Submission of Dubin's Urgent Ex Parte Request under Oath to the Honorable J. Michael Seabright, Chief Judge, to Amend his July 12, 2021 "Order Appointing Three-Judge Hearing Panel" in Related Civil No. 20-00419 JAO [Doc. 39] to Include this Case and to Consolidate the Two Cases. ECF No. 31. In it, they request consolidation of this case and Dubin's pending reciprocal discipline case (*In re Dubin*, Civil No. 20-00419 JAO-KJM) because "many if not most of the underlying issues are the same." ECF No. 31-1 ¶ 10. Plaintiffs also request a three-judge panel excluding any district judge presiding over one of Dubin's cases currently pending in district court or on appeal. *Id.* Plaintiffs' effort to consolidate this supposedly "independent" litigation with reciprocal discipline proceedings addressing Dubin's disbarment evidences the actual purpose of this litigation. Notably, in *In re Dubin*, Dubin's counsel, Keith Kiuchi ("Kiuchi"), also recently identified the claims here as grounds to avoid reciprocal discipline. *See* Civil No. 20-00419 JAO-KJM, ECF No. 66 at 8.

targeting the disciplinary system in general, and avoid expressly asking to overturn the Disbarment Order, voidance of that order is the outcome they effectively seek.[10]  Indeed, while maintaining that he is not trying to set aside his disbarment, Dubin concedes that such an outcome "would arguably result once the entire Hawaii bar is freed from the specter of the federal constitutional abuses he experienced in abundance."  *Id.* at 25 n.3.  The Court finds disingenuous Dubin's representation at the hearing that he is only requesting prospective relief, which he could not reconcile with the aforementioned concession, and which is directly contradicted by the Complaint.

Plaintiffs not only seek damages for alleged constitutional violations, but also declaratory remedies that are designed to undo Dubin's disbarment.  *See* Compl. ¶ 394 (seeking a declaration that HSC's attorney discipline structure violates the Fourteenth Amendment's due process and equal protection guarantees as promulgated and/or as applied, and is unconstitutional pursuant to the Hawai'i Constitution).  Notwithstanding Plaintiffs' calculated efforts to frame some claims

---

[10]  Notably, in Dubin's Petition for Writ of Certiorari — the only avenue for directly challenging his disbarment — he raised the *same* claims included in this litigation.  ECF No. 10-3.  This lends support to the view that this case, disguised in part as a general constitutional challenge to the attorney discipline system in Hawai'i, is actually an effort to overturn Dubin's disbarment.  Moreover, Plaintiffs state in the Complaint that additional former clients will seek leave to join this action "once *the harmful acts and conduct challenged below* become also known to and experienced by them."  Compl. ¶ 11 (emphasis added).

18

as general challenges to the disciplinary system, they are in fact objecting to Dubin's disbarment.  To be clear, the Court acknowledges that general constitutional challenges to Hawaii's discipline process are permissible, but Plaintiffs' filings, coupled with their recent efforts to consolidate this case with Dubin's reciprocal discipline proceedings, reveal that their primary — if not exclusive — motivation is to challenge Dubin's disbarment.[11]  This suit is therefore barred by *Rooker-Feldman* for the reasons that follow.

### A.   Due Process Claims – Counts Five (as Applied), Six (as Applied), Seven, and Eight

In particular, the due process challenges articulated in Counts Five and Six (as applied to Dubin) and Counts Seven and Eight, are de facto appeals of the Disbarment Order because Plaintiffs complain of legal wrongs committed during the course of Dubin's disciplinary proceedings and they seek relief from the Disbarment Order, even if indirectly.  Counts Five (by Dubin) and Six (by the Client Plaintiffs[12]) against the State Defendants allege that HSC and its disciplinary

---

[11]  Most recently, Dubin filed another lawsuit against ODC, Tamm, and Nakea, seeking to set aside the Disbarment Order due to alleged constitutional violations and extrinsic fraud.  *See* Civil No. 21-00392 JAO-KJM, ECF No. 1.

[12]  The Court acknowledges that *Rooker-Feldman* is generally limited to parties from the state court proceedings.  *See Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994).  As a result, the claims asserted by the Client Plaintiffs — who were not parties to the disciplinary proceedings — should not be barred by *Rooker-Feldman*.  However, Dubin's claims and the Client Plaintiffs' claims are identical

(continued . . .)

procedures as applied violate the Due Process Clause of the Fourteenth

Amendment by denying targeted attorneys constitutionally protected evidentiary

and appellate rights.  Compl. ¶¶ 337, 352.  Counts Seven (by Dubin) and Eight (by

the Client Plaintiffs) accuse the Disciplinary Defendants of individually or together

conspiring to target Dubin; hiding conflicts of interest and exculpating evidence;

providing false information to HSC through ex parte communications, designed to

result in Dubin's disbarment; and denying Dubin the right to a fair hearing, all in

violation of the Due Process Clause of the Fourteenth Amendment.  *Id.* ¶¶ 367,

376.  These claims all arise out of Dubin's state disciplinary proceedings and are

premised on purported infirmities that contributed to his disbarment.  That is, they

"constitute a particularized challenge to [Hawaii's] disciplinary proceedings'

results."  *Mothershed*, 410 F.3d at 608; *see id.* at 605–08 (affirming the district

court's determination that the plaintiff's claims — raised under 42 U.S.C. § 1983

for due process and other constitutional violations, as well as state law tort claims

_____

(. . . continued)
in every respect, with the exception of Count Nine.  Counts One, Three, Five, and
Seven (asserted by Dubin) are the same as Counts Two, Four, Six, and Eight
(asserted by the Client Plaintiffs), so there are really only four claims among these
eight counts.  If *Rooker-Feldman* bars Dubin from asserting the claims, there is no
basis for the Client Plaintiffs to litigate them, especially because these claims arise
out of Dubin's disciplinary proceedings.  Even if the Client Plaintiffs' claims are
not barred by *Rooker-Feldman*, they are subject to dismissal for the additional
grounds discussed below.

— relating to procedural shortcomings in his Arizona and Oklahoma disciplinary proceedings, were barred by *Rooker-Feldman*).[13]   Dubin already presented at least some of these arguments to HSC in a motion for reconsideration and it rejected them.   ECF No. 10-6.

Moreover, Plaintiffs request a declaration that HSC's attorney discipline structure violates the Fourteenth Amendment's Due Process Clause, and they seek monetary damages.   Without disbarment, Dubin would have suffered no injury. Such a declaration would undercut the disciplinary process employed against Dubin and any damages would require a finding that there was error with the process and/or Disbarment Order.   *See Cooper*, 704 F.3d at 782 ("Cooper's prayer for relief in the form of monetary and punitive damages, although distinct from his prayer for a declaratory judgment that he is entitled to DNA testing, is contingent upon a finding that the state court decision was in error."); *Henrichs*, 474 F.3d at

---

[13]   In *Mothershed v. Justices of the Supreme Court*, the plaintiff, an attorney licensed to practice in Oklahoma, lived and practiced in Arizona.   *See* 410 F.3d at 605.   The Arizona disciplinary board alleged that he unlawfully practiced there. *See id.*   The plaintiff then sought dismissal of the complaint on the basis that he did not receive a summons.   *See id.*   After the hearing officer denied the motion, the plaintiff refused to participate in the disciplinary proceedings, which resulted in the entry of default judgment against him.   *See id.*   The Supreme Court of Arizona then entered an order censuring the plaintiff "for engaging in the unauthorized practice of law."   *See id.* (citation omitted).   The Oklahoma Bar Association subsequently initiated disciplinary proceedings against the plaintiff.   *See id.* A three-member trial panel concluded that he practiced law unlawfully in Arizona, and the Supreme Court of Oklahoma disbarred him.   *See id.* (citation omitted).

616.  Accordingly, this portion of the lawsuit is a de facto appeal and is consequently barred by *Rooker-Feldman*.

Having determined that this case is in part a de facto appeal, the Court must ascertain whether the remaining claims "are '"inextricably intertwined" with an issue resolved by the state court judicial decision from which the forbidden de facto appeal is taken.'"  *Cooper*, 704 F.3d at 781 (*quoting Noel*, 341 F.3d at 1165).

> As a practical matter, the "inextricably intertwined" test . . . is likely to apply primarily in cases in which the state court both promulgates and applies the rule at issue — that is, to the category of cases in which the local court has acted in both legislative and a judicial capacity — and in which the loser in state court later challenges in federal court both the rule and its application.

*Noel*, 341 F.3d at 1158.  This category of cases includes those "involving litigation and attorney disciplinary rules."  *Id.* (citation omitted).

## B.    Unconstitutional Exercise of Legislative Authority — Counts One and Two

Counts One (by Dubin) and Two (by the Client Plaintiffs) — asserted against the State Defendants — claim that HSC and the state attorney discipline system have no jurisdiction to regulate attorneys outside of the courtroom because the Hawai'i Constitution confers the Hawai'i legislature with the authority, and the legislature has not delegated said authority to HSC.  Compl. ¶¶ 277, 292.  In other words, Plaintiffs attempt to undo Dubin's disbarment by claiming that, under the Hawai'i Constitution, the State Defendants lacked jurisdiction to discipline him.

Were the Court to grant relief on this claim by declaring that the State Defendants violated the Hawai'i Constitution and lacked jurisdiction, the Disbarment Order would be voided. As such, Counts One and Two are "inextricably intertwined" with the Disbarment Order. Adjudicating these claims "would undercut the state ruling or require" the Court "to interpret the application of state laws or procedural rules." *Bianchi*, 334 F.3d at 898. The Court must therefore dismiss the claims for lack of subject matter jurisdiction. *See id.*

## C.   Equal Protection Claims — Counts Three and Four

Counts Three (by Dubin) and Four (by the Client Plaintiffs) aver that the State Defendants violate the Equal Protection Clause of the Fourteenth Amendment based on HSC's disparate regulation of the legal profession, compared to the legislature's regulation of other professions and occupations, which are afforded greater rights.[14] Compl. ¶¶ 307, 322. Plaintiffs frame these claims as a general challenge to a purported lack of rights afforded in the disciplinary process.[15] But this is a transparent effort to complain about the protective measures that Dubin believes he was deprived of in his disciplinary proceedings.

---

[14] This is the crux of the claim even though Plaintiffs also lump in their lack of jurisdiction allegations from Counts One and Two.

[15] The Court acknowledges that if not for the fact that these claims are "inextricably intertwined," general constitutional challenges to the disciplinary process would not be barred by *Rooker-Feldman*.

Like Counts One and Two, Counts Three and Four are "inextricably intertwined" with the Disbarment Order.  A declaration that HSC's attorney discipline structure violates the Fourteenth Amendment's equal protection guarantees would undercut and/or void the Disbarment Order.

### D.     Due Process Claims — Counts Five and Six (as Promulgated)

The balance of Counts Five (by Dubin) and Six (by the Client Plaintiffs) allege that HSC and disciplinary procedures as promulgated violate the Due Process Clause of the Fourteenth Amendment by denying targeted attorneys constitutionally protected evidentiary and appellate rights.  Compl. ¶¶ 337, 352. Challenges to the promulgation of HSC and disciplinary procedures concern their general validity, not their application, so they are not ordinarily barred by *Rooker-Feldman*.  Insofar as Plaintiffs' requested relief would have the same practical effect on the Disbarment Order as the "as applied" portion of these claims, however, the "as promulgated" aspect of these claims are "inextricably intertwined" with the issues in the state court proceedings.

### E.     First Amendment Claim — Count Nine

In Count Nine, Dubin avers that the Disciplinary Defendants engaged in the conduct alleged in Counts Seven and Eight for the purpose of cancelling his radio show, in violation of the First Amendment.  *Id.* ¶¶ 385–87.  Because this claim is predicated on the Disciplinary Defendants' allegedly improper actions relating to

24

his disciplinary process and would not have occurred but for Dubin's disbarment, the Court finds that it too is "inextricably intertwined" with the disciplinary proceedings and is directly tied to conduct from those proceedings.

For these reasons, a portion of this action is a de facto appeal of the Disbarment Order and the balance of the claims are "inextricably intertwined" with that order and Dubin's disciplinary proceedings.  Plaintiffs' claims must accordingly be dismissed under *Rooker-Feldman*.

## II.   Eleventh Amendment

If Plaintiffs' claims were not barred by *Rooker-Feldman*, they would be subject to dismissal pursuant to the Eleventh Amendment.  "The Eleventh Amendment shields unconsenting states from suits in federal court," *K.W. v. Armstrong*, 789 F.3d 962, 974 (9th Cir. 2015) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)), and bars individuals from bringing lawsuits against a state or an instrumentality of a state for monetary damages or other retrospective relief.  *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016).  It "applies regardless of the nature of relief sought and extends to state instrumentalities and agencies." *Krainski v. Nevada ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)).  Suits against state officials in their official capacities are likewise barred because they constitute suits against the state

itself.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  State law

claims asserted in federal court against states, state agencies, and state officials

acting in their official capacities are barred by the Eleventh Amendment.  *See*

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Cent. Rsrv.*

*Life of N. Am. Ins. Co. v. Struve*, 852 F.2d 1158, 1160–61 (9th Cir. 1988).

      Eleventh Amendment immunity is not absolute, however.  Congress may

abrogate a state's immunity, or a state may waive immunity.  *See Clark v.*

*California*, 123 F.3d 1267, 1269 (9th Cir. 1997).  In addition, under the *Ex parte*

*Young* exception to Eleventh Amendment immunity, "private individuals may sue

state officials in federal court for *prospective* relief from ongoing violations of

federal law, as opposed to money damages, without running afoul of the doctrine

of sovereign immunity."  *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019)

(citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011)).

*Ex parte Young* is based on the proposition "that when a federal court commands a

state official to do nothing more than refrain from violating federal law, he is not

the State for sovereign-immunity purposes."  *Va. Office for Prot. & Advocacy*, 563

U.S. at 255.  It does not apply "when 'the state is the real, substantial party in

interest.'"  *Id.* (some internal quotation marks and citation omitted).  "A state is

deemed to be the real party in interest where 'the judgment sought would . . .

interfere with the public administration,' or if the effect of the judgment would be

26

'to restrain the Government from acting, or to compel it to act.'" *Cent. Rsrv.*, 852

F.2d at 1161 (alteration in original) (some internal quotation marks and citation

omitted).

Here, Defendants have not consented to suit.  Therefore, the Eleventh

Amendment would bar Counts One and Two, as they allege a violation of the

Hawaiʻi Constitution.[16]  Nor has Congress abrogated immunity for 42 U.S.C.

§ 1983 claims.[17]  *See Will*, 491 U.S. at 66–67.  Counts Three through Nine would

consequently be barred against (1) HSC, as an instrumentality of the state, *see*

*Yamano v. Haw. Judiciary*, 765 F. App'x 198, 199 (9th Cir. 2019) ("The district

court properly dismissed Yamano's claim against defendant State of Hawaii

Judiciary because her claim is barred by the Eleventh Amendment." (citations

omitted); *Yamano v. Haw. Judiciary*, Civ. No. 18-00078 SOM-RLP, 2018 WL

3431921, at *4 (D. Haw. July 16, 2018) (deeming the State of Hawaii Judiciary an

---

[16]  Counts One and Two cannot be excepted from the Eleventh Amendment bar even if Plaintiffs seek prospective relief because the *Ex Parte Young* exception is limited to suits for prospective relief for ongoing violations of *federal* law.  *See Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018) (explaining that the *Ex Parte Young* "exception does not apply when a suit seeks relief under state law, even if the plaintiff names an individual state official rather than a state instrumentality as the defendant" (citation omitted)).

[17]  Plaintiffs only invoke § 1983 (improperly identifying the Title as 28) in Counts Seven through Nine.  Compl. ¶¶ 368, 377, 387.  However, § 1983 is the vehicle by which to present the constitutional violations asserted in Counts Three through Six as well.  *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004).

instrumentality of the state); Haw. Const. Art. 1, § 1 (conferring the Hawaiʻi state courts with the judicial power of the State); *Simmons v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (barring claims under the Eleventh Amendment against state courts and their employees, as arms of the state (citations omitted)); (2) the Disciplinary Entities, as creatures of HSC, *see In re Disciplinary Bd.*, 91 Hawaiʻi at 368, 984 P.2d at 693 (ODC and Disciplinary Board); RSCH Rule 10 (Lawyers' Fund); and (3) the Justices and Judge Leonard, who are sued in their official capacities, to the extent retrospective declaratory relief is sought. *See, e.g.*, *Rapp v. Disciplinary Bd. of the Haw. Sup. Ct.*, 916 F. Supp. 1525, 1531 (D. Haw. 1996) (applying Eleventh Amendment to the Disciplinary Board of HSC and to the Justices of HSC).

## III.  Third-Party Standing

Even if the claims asserted by the Client Plaintiffs (Counts Two, Four Six, and Eight) were not dismissed for the reasons set forth above, they are subject to dismissal because the Client Plaintiffs lack third-party standing.[18]  The "[s]tanding

---

[18]  Defendants argue that the Client Plaintiffs lack Article III standing.  ECF No. 10-1 at 25–26.  The Client Plaintiffs offer no substantive arguments regarding their standing, except to say that "the continual injuries to [the] individual clients are all ongoing and brutal" and they were "prejudicially injured" by Dubin's disbarment in the middle of their cases.  ECF No. 19 at 31.  Even assuming the Client Plaintiffs have Article III standing — which is questionable based on their alleged injury — they do not have prudential standing for the reasons detailed below.

doctrine involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.  The constitutional aspect inquiries whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Article III by demonstrating a sufficient personal stake in the outcome." *McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 878 (9th Cir. 2011) (internal quotation marks and citation omitted).  It is well established that notwithstanding the allegation of a sufficient injury to meet Article III's "case or controversy" requirement, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1118 (9th Cir. 2015) (internal quotation marks, citation, and footnote omitted).  "As the prohibition against third-party standing is prudential, rather than constitutional, the Supreme Court has recognized exceptions to this general rule."[19]  *Coal. of Clergy v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002).  Litigants may bring claims on

---

[19]  "In recent years, the Supreme Court has cast some doubt on prudential standing rules as being 'in some tension' with a federal court's 'virtually unflagging' obligation to 'hear and decide cases within its jurisdiction.'" *Meland v. WEBER*, 2 F.4th 838, 848 n.5 (9th Cir. 2021) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)).  However, third party standing "'continues to remain in the realm of prudential standing.'" *Id.* (quoting *Ray Charles*, 795 F.3d at 1118 n.9).  Prudential standing "is not a requirement of jurisdiction," *Hilton v. Hallmark Cards*, 599 F.3d 894, 904 n.6 (9th Cir. 2010) (citation omitted), but the Court may raise prudential standing issues sua sponte. *See City of Los Angeles v. County of Kern*, 581 F.3d 841, 845–46 (9th Cir. 2009).

behalf of third parties if three requirements are met:  (1) "[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute"; (2) "the litigant must have a close relationship with the third party"; and (3) "there must exist some hindrance to the third party's ability to protect his or her own interests."  *Id.*

### A.   Injury in Fact

Here, the Complaint generally identifies the denial of Dubin's legal representation as the Client Plaintiffs' harm:

> 9.  Not only has Dubin as alleged below been unfairly harmed by the acts and conduct complained of herein, but his clients have also been similarly grievously harmed as also explained below, having their cases and their legal rights and their lives disrupted and their investment in Dubin's legal services threatened and/or lost by the unconstitutional and abusive manner in which he has been treated.

> 10.  And as a result, hundreds of Dubin's clients, above-named, having standing as victims also to complain, have therefore volunteered to join him in this lawsuit collectively  and individually as Client Plaintiffs, being separately denied unfairly and prejudicially his continuing and/or his future legal services in state courts in Hawaii and his legal advice, as well as subjecting Dubin to pending reciprocal discipline in other jurisdictions.

Compl. ¶¶ 9–10.  But their actual claims are identical to Dubin's claims.  *Compare* Compl. ¶¶ 277, 307, 337, 367 *with id.* ¶¶ 292, 322, 352, 376.  Because the claims either challenge Dubin's disciplinary proceedings or the disciplinary system in

Hawaiʻi — in which only Dubin or attorneys have a stake — the Client Plaintiffs cannot assert the requisite injury in fact.

First, the only party to potentially suffer a direct injury with respect to disciplinary proceedings is the subject attorney. *See Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1567 (10th Cir. 1993) ("The fact is that the only one who stands to suffer direct injury in a disciplinary proceeding is the lawyer involved.  Doyle has no more standing to insert himself substantively into a license-based discipline system than he has to compel the *issuance* of a license."); *cf. Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

Even if the Client Plaintiffs were harmed by Dubin's disbarment in that they could no longer receive his legal services, that is not a legally protected interest. *See Spokeo, Inc. v. Robins*, 578 U.S. 856, ___, 136 S. Ct. 1540, 1548 (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  There is no right to counsel in civil proceedings, including foreclosure proceedings.  *See Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1038–39 (9th Cir. 2021) ("[T]here is 'no constitutional right to counsel in a civil case.'" (citation omitted)); *Hawaiʻi v.*

31

*Stone*, Case No. 19-cv-00272-DKW-RT, 2020 WL 1643856, at *2 (D. Haw. Apr.

2, 2020) ("[I]n a *civil* case, such as foreclosure, there is no right to representation

by a *lawyer*." (citing *Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir. 1985)),

*aff'd*, 830 F. App'x 964 (9th Cir. 2020).  In any event, at least some of Dubin's

former clients —  it is unclear whether the Client Plaintiffs are among these clients

— are not without counsel in foreclosure proceedings because Kiuchi is

representing them pro bono.  *See In re Dubin*, Civil No. 20-00419 JAO-KJM, ECF

No. 42 ¶ 4; *see also* ECF No. 10-6 at 2 (noting the transfer of Dubin's law practice

to Mr. Kiuchi).

     Although courts have "generally acknowledged a civil litigant's Fifth

Amendment due process right to retain and fund the counsel of their choice," this

right applies "only in extreme scenarios where the government substantially

interferes with a party's ability to communicate with his or her lawyer or actively

prevents a party who is willing and able to obtain counsel from doing so."  *Adir

Int'l*, 994 F.3d at 1039–40 (citation omitted).  The Client Plaintiffs' inability to

utilize Dubin does not fall within these limited circumstances because Dubin's

disbarment *prohibits* his participation in Hawai'i state court proceedings.  And

again, they do not assert distinct claims from Dubin regarding any deprivation of

counsel; they instead challenge HSC's and the disciplinary system' jurisdiction, as

well as the constitutionality of the disciplinary process (generally and as applied to Dubin).

Second, to the extent that the Client Plaintiffs challenge the constitutionality of disciplinary system generally, it is not an injury because it "no more directly and tangibly benefits [them] than it does the public at large." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (internal quotation marks and citation omitted).

### B. Dubin's Ability to Protect His Interests

Neither are the Client Plaintiffs able to show that Dubin, the aggrieved party, is impeded from asserting his own claims. *See McCollum*, 647 F.3d at 879 (citation omitted). Dubin is a party to *this action* and presents the *same claims* as the Client Plaintiffs. Therefore, the Client Plaintiffs fail to meet this element for third party standing.

Because the Client Plaintiffs have not identified an injury in fact, nor demonstrated that Dubin is hindered in his ability to protect his interests, third party standing is lacking[20] and is an additional basis to DISMISS the Client Plaintiffs' claims (Counts Two, Four, Six, and Eight).

### IV. Immunity

The Justices, Judge Leonard, and the Disciplinary Individuals would also be

---

[20] Insofar as the Client Plaintiffs failed to satisfy two requirements, the Court need not discuss the parties' relationship.

entitled to judicial, legislative, prosecutorial, or quasi-judicial immunity if

Plaintiffs' claims were not otherwise dismissed.

### A.   The Justices and Judge Leonard Are Entitled to Judicial and Legislative Immunity

 "Judicial immunity is a common law doctrine developed to protect judicial

independence" and "[i]t bars suits against judges, and other officials who exercise

'discretionary judgment' similar to that of judges, when the plaintiff's suit is

predicated on actions taken in the judge's judicial capacity." *Moore v. Urquhart*,

899 F.3d 1094, 1103 (9th Cir. 2018) (citations omitted).  This "immunity applies

'however erroneous the act may have been, and however injurious in its

consequences it may have proved to the plaintiff.'" *Cleavinger v. Saxner*, 474 U.S.

193, 199–200 (1985) (citation omitted).  Common law judicial immunity bars suits

for money damages but does not preclude an award of declaratory or injunctive

relief.  *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (citing

*Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)); *Moore*, 899 F.3d at 1104 (citing

*Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984)).  However, Congress amended

§ 1983 in 1996, expanding the scope of judicial immunity and limiting "the

circumstances in which injunctive relief may be granted against judges." *Moore*,

899 F.3d at 1104.  Section 1983 states that "in any action brought against a judicial

officer for an act or omission taken in such officer's judicial capacity, injunctive

relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity only covers judicial acts, not non-judicial acts such as "'the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform.'" *Lund v. Cowan*, 5 F.4th 964, 971, 2021 WL 2965447 (9th Cir. 2021) (citation omitted). These factors are relevant to the determination of whether an act is judicial:

> "(1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity."

*Id.* (citation omitted).

The actions taken by the Justices and Judge Leonard that related to Dubin's disciplinary proceedings were part of HSC's review of attorney disciplinary issues and adjudication thereof. Thus, they are entitled to judicial immunity, *see Hirsh v. Justs. of the Sup. Ct. of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995) (per curiam) ("The justices of the California Supreme Court have absolute immunity for their role in reviewing the recommendations of the Bar Court." (citation omitted)), even as to declaratory relief.[21] *See Craig v. Villicana*, 676 F. App'x 716, 716 (9th Cir. 2017)

---

[21] Plaintiffs have not alleged that "a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

(affirming application of judicial immunity to state court judge and noting the extension of judicial immunity to declaratory and other equitable relief (citation omitted)).

With respect to the "as promulgated" portion of Plaintiffs' due process challenges to HSC rules and disciplinary procedures (Counts Five and Six), the Justices and Judge Leonard would be "entitled to absolute legislative immunity for actions relating to the promulgation of disciplinary rules." *Hirsh*, 67 F.3d at 715 (citing *Sup. Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 734 (1980)).

### B. The Disciplinary Individuals Are Entitled to Prosecutorial and/or Quasi-Judicial Immunity

Quasi-judicial immunity extends judicial immunity to "'certain others who perform functions closely associated with the judicial process.'" *Duvall*, 260 F.3d at 1133 (citation omitted). "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges — that is, because they, too, 'exercise a discretionary judgment' as a part of their function." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993) (brackets and citations omitted). These nonexclusive factors are considered to determine whether a state officer's role is "functionally comparable" to a judge:

> "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a

36

> means of controlling unconstitutional conduct; (c) insulation
> from political influence; (d) the importance of precedent; (e) the
> adversary nature of the process; and (f) the correctability of error
> on appeal."

*Buckwalter v. Nev. Bd. of Med. Exam'rs*, 678 F.3d 737, 740 (9th Cir. 2012)

(citation omitted).  "Administrative law judges and agency prosecuting attorneys

are entitled to quasi-judicial immunity so long as they perform functions similar to

judges and prosecutors in a setting like that of a court."  *Hirsh*, 67 F.3d at 715

(citation omitted).

The foregoing factors apply to the Disciplinary Individuals based on the

functions of ODC and the Disciplinary Board, the entities for which they volunteer

or work.  ODC "performs [an] investigative and prosecutorial role," and "[i]n

effect, ODC, the Disciplinary Board, and the committees appointed pursuant to

Rule 2, function as [HSC's] special masters to carry out [its] authority to

investigate, prosecute, dispose of, or make recommendations about attorney

disciplinary matters."  *In re Disciplinary Bd.*, 91 Hawaiʻi at 368–69 & n.12, 984

P.2d at 693–94 & n.12 (citation omitted).  Hence, the Disciplinary Individuals are

entitled to quasi-judicial and/or prosecutorial immunity.  *See Hirsh*, 67 F.3d at 711,

715 (holding that judges and prosecutors of the State Bar Court, an administrative

agency affiliated with the California State Bar Association that handled attorney

discipline matters, had quasi-judicial immunity from monetary damages); *Clark v.

Washington*, 366 F.2d 678, 681 (9th Cir. 1966) ("As an arm of the Washington

Supreme Court in connection with disciplinary proceedings, the Bar Association is an 'integral part of the judicial process' and is therefore entitled to the same immunity which is afforded to prosecuting attorneys in that state." (footnote omitted)).

In sum, the Court concludes that *Rooker-Feldman* bars Plaintiffs' claims and subject matter jurisdiction is therefore lacking.  Alternatively, Plaintiffs' claims are subject to dismissal under the Eleventh Amendment (Counts One through Six; Counts Seven through Nine as to the Disciplinary Entities), for lack of third party standing (Counts Two, Four, Six, and Eight), for judicial or legislative immunity (Counts One through Six as to the Justices and Judge Leonard), and for quasi-judicial and/or prosecutorial immunity (Counts Seven through Nine as to the Disciplinary Individuals).  The Court accordingly DISMISSES WITHOUT PREJUDICE the Complaint.[22]  Insofar as amendment would be futile, the Court declines to grant leave to amend.  *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010).

//

//

//

---

[22]  Dismissals for lack of subject matter jurisdiction should be without prejudice. *See Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004).

## CONCLUSION

For the reasons stated herein, the Court GRANTS the Motion to Dismiss and

Joinder.  ECF Nos. 10, 11.

IT IS SO ORDERED.

DATED:     Honolulu, Hawaiʻi, September 30, 2021.



Jill A. Otake
United States District Judge

Civil No. 21-00175 JAO-KJM, *Dubin, et al. v. The Supreme Court of the State of Hawaii, et al.*; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND FOR ACTUAL AND PUNITIVE CIVIL RIGHTS DAMAGES

39